UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EVERYDAY PEOPLE NYC LLC,

Plaintiff,

-against-

ROBLE ALI,

Defendant.

**MEMORANDUM & ORDER**
**23-CV-2436 (NGG) (PCG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Everyday People NYC LLC ("Everyday People") moves for an entry of default judgment against Defendant Roblé Ali ("Defendant"). Plaintiff brought this action on March 29, 2023, alleging infringements by the Defendant of its trademarks, unlawful impersonation of Plaintiff in connection with a copycat website and hijacked social media accounts, and breaches of contract and fiduciary duty. (Compl. ¶ 1.) Defendant allegedly used his position as a member of Plaintiff's LLC to gain access to Plaintiff's bank accounts and transfer money to himself in breach of the LLC's operating agreement and in violation of New York law. (*Id.* ¶ 2.) For the reasons set forth below, the court ADOPTS the R&R, subject to one amendment.

## I. BACKGROUND

A summons was issued as to Defendant on April 4, 2023. (Summons (Dkt. 5).) When Defendant failed to appear, Plaintiff sought a certificate of default from the clerk which was entered on July 10, 2023. (Clerk's First Entry of Default (Dkt. 9).) Plaintiff moved for default judgment on October 23, 2023, (Pl.'s First Mot. for Default J. (Dkt. 10)), a motion which this court referred to then-Magistrate Judge Cheryl L. Pollak for a Report and Recommendation on October 26, 2023, (Text Order Dated 10/26/2023). Judge Pollak held an inquest hearing on February

22, 2024 at which Defendant did not appear. (Minute Entry Dated 2/23/2024.) On August 4, 2024, Magistrate Judge Pollak issued her Report and Recommendation (the "First R&R"), recommending that this court deny Plaintiff's motion, and vacate the Clerk's entry of default. (First R&R (Dkt. 23).) This court adopted the First R&R's recommendations in full on August 23, 2024, denied Plaintiff's motion for default judgment, and vacated the clerk's certificate of default. (M&O Adopting First R&R (Dkt. 24).) This was because Plaintiff never properly served Defendant with a copy of the Summons and Complaint. (M&O Adopting First R&R at ECF pp.16-17.)

Plaintiff moved to serve Defendant by alternative means on April 7, 2025, which this court again referred to Magistrate Judge Pollak, this time for decision, on May 12, 2025. (Pl.'s Mot. for Leave to Serve Def. by Alt. Means (Dkt. 26); Mem. in Supp. of Mot. (Dkt. 27); Text Order Referring Mot. to Mag. J. Pollak Dated 5/12/2025.) Magistrate Judge Pollak granted the motion on June 24, 2025. (M&O Granting Alt. Service (Dkt. 28).) On July 15, 2025, Plaintiff served Defendant via the approved alternative means. (Pl.'s Aff. of Serv. (Dkt. 29).) After Plaintiff requested another certificate of default on September 2, 2025, the Clerk of Court eventually entered a certificate of default against Defendant on November 7, 2025. (Clerk's Second Entry of Default (Dkt. 37).)

Upon Magistrate Judge Pollak's retirement, Magistrate Judge Peggy Cross-Goldenberg was reassigned to the case. (Court Event Dated 1/14/2026.) Plaintiff then filed the instant Motion for Default Judgment on January 28, 2026 (Pl.'s Second Mot. for Default J. (Dkt. 40).) The court referred the Motion to Magistrate Judge Peggy Cross-Goldenberg for an R&R on January 30, 2026. (Text Order Dated 1/30/2026.)

## II. R&R

Magistrate Judge Cross-Goldenberg issued her R&R (the "Default R&R") on August 27, 2026, recommending that the court grant in part Plaintiff's motion for default judgment—specifically, granting default judgment as to Counts I, II, IV, but denying default judgment as to Counts III, V, VI, and VII. The Default R&R suggests that Plaintiff be awarded $169,000 in damages, $61,359.70 in attorneys' fees, and $1,855 in costs. It also recommends granting injunctive relief, which would **prohibit** Defendant from the following:

[(i.)] holding himself out as a member, manager, or as being otherwise affiliated with Everyday People; [(ii.)] acting, doing business, or purporting to act or do business in any way on behalf of Everyday People; [(iii.)] accessing any Everyday People bank accounts, email accounts including those ending in everydaypplnyc.com, Dropbox or other filesharing accounts, company computers or other devices, company online or website accounts of any kind including everydaypplnyc.com and company social media accounts, and any other company assets; [(iv.)] making, using, or accessing any website account of any kind purporting to be an official website or account belonging to Everyday People, including www.everydayppl.co. [(v.)] using the EVERYDAY PPL and EVERYDAY PEOPLE marks, or any other mark, word, or name incorporating or confusingly similar to Everyday People's Marks; [(vi.)] representing by any means whatsoever, that Defendant and his alleged goods and services are associated in any way with Everyday People or its Marks; [(vii.)] from doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead others to believe that Defendant's products or services originate from or are the products or services of Everyday People, or are somehow sponsored by or associated with Everyday People; and [(viii.)] from otherwise

unfairly competing with Everyday People or misappropriating Everyday People's good will.

Defendant also must **take the following affirmative actions:**

[(i.)] delete, disable, remove, or otherwise take down the Infringing Website everydayppl.co; [(ii.)] release and relinquish control over everydaypplnyc.com and restore control to Everyday People of business emails and accounts ending in everydaypplnyc.com; and [(iii.)] revert Everyday People's TikTok account (and any other social media account he has hijacked) back to Everyday People and remove his email and phone number from such account(s) and relinquish all control thereof[; and (iv.)] issue a corrective statement, subject to approval by Plaintiff, announcing to the public that the Infringing Website, stolen email accounts, and hijacked TikTok account were not, during the relevant time period, controlled by Plaintiff and that he had unlawfully appropriated such assets for his own benefit, and clarifying that control has now been relinquished to Everyday People.

(R&R at 37-38 (citing Compl. at Prayer for Relief).)

## III. ANALYSIS

Neither party has objected to Judge Cross-Goldenberg's Default R&R, and the time to do so has passed. *See* Fed. R. Civ. P. 72(b)(2). In reviewing a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections have been made, the district court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (summary order) ("Where . . . a party receives clear notice of the consequences of not objecting to a report and recommendation, the party's failure to object to any purported error or

omission in a magistrate judge's report results in the district court's review only for clear error."). Therefore, the court reviews the Default R&R for clear error. *Id.*; *see also Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014) ("unobjected to portions of the R&R [receive] clear error review."). Clear error is "found only when, upon review of the entire record, the [c]ourt is left with 'the definite and firm conviction that a mistake has been committed.'" *See United States v. Veeraswamy*, 765 F. Supp. 3d 168, 180 (E.D.N.Y. 2025) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)). Having performed this analysis, the court ADOPTS the findings of the Default R&R, subject to one clarification that, as detailed below, does not disturb Judge Cross-Goldenberg's ultimate conclusions.

### A. Clarification on Damages and Attorneys' Fees Analysis

The court adopts in full Judge Cross-Goldenberg's ultimate recommendations on damages and attorneys' fees, but it does so under a different standard for the latter.

#### 1. Damages

Judge Cross-Goldenberg correctly identifies the standard for damages in a default judgment action. Specifically, Judge Cross-Goldenberg correctly finds that the court must "make an independent assessment of damages when deciding a motion for default judgment," (Default R&R at 40 (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 155 (E.D.N.Y. 2010))), based on "a review of detailed affidavits and documentary evidence," (*id.* (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d. Cir. 2012)).)

She then correctly recommends only $169,000 in damages—even though the instant motion seeks a higher number—because relief in a default judgment must be limited to what is demanded

in the pleadings so that a "defendant who is considering default can look at the damages clause [contained in the complaint], satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." (Default R&R at 41 (quoting *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007).) Further, when a complaint alleges an entitlement to punitive damages but those damages are not further pursued, the court may deem that request abandoned. (*Id.* at 40 (quoting *Moore v. Houlihan's Rest., Inc.*, 2011 WL 2470023, at *4 n.5 (E.D.N.Y. May 10, 2011), *report and recommendation adopted*, 2011 WL 2462194 (E.D.N.Y. June 17, 2011)).)

2. Attorneys' Fees

However, the Default R&R mistakenly identifies an overturned legal standard when it discusses the award of attorneys' fees. The R&R is correct that "Section 35(a) of the Lanham Act provides for reasonable attorney's fees to the prevailing party in 'exceptional cases.'" (*Id.* at 42 (quoting *Gen. Nutrition Inv. Co. v. Gen. Vitamin Centers, Inc.*, 817 F. Supp. 2d 66, 74 (E.D.N.Y. 2011).) But it is no longer true that "[i]n the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement." (*Id.* (quoting *Gen. Nutrition Inv. Co.*, 817 F. Supp. 2d at 74).)

In *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019), the Second Circuit modified this standard. Given that the Supreme Court had "interpreted an identical attorney's fee provision [to the Lanham Act] found in the Patent Act" as requiring "district courts to be given wide latitude as they engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances,'" the Second Circuit found that the same standard "applies to the attorney's fees provision in the Lanham Act." *4 Pillar Dynasty*, 933 F.3d at 215 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)). When

undertaking this new, broader exercise, "courts may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.*

As mentioned, Judge Cross-Goldenberg analyzes Plaintiff's request for attorneys' fees under the older *Gen. Nutrition* standard. (*See* Default R&R at 42-43.) She ultimately finds that "Defendant's infringement was willful and that Plaintiff is [therefore] entitled to attorneys' fees" under that standard. (*Id.* at 43.) The court notes that, in coming to this recommendation, Judge Cross-Goldenberg did consider the broader allegations in the case, at least to an extent. Namely, she considered that "Defendant knowingly used [Plaintiff's trademarks] without permission and with the intent to misdirect customers to his copycat website and social media accounts" as "further support[ing] a finding" that Plaintiff was entitled to these fees. (*Id.* at 42.) Nonetheless, for the avoidance of doubt, the court now formally engages in the updated *4 Pillar Dynasty* totality-of-the-circumstances analysis to confirm that attorneys' fees are warranted.

First, the court considers the question of frivolousness. It finds that Plaintiff's claims are not frivolous because the "legal theories on which they were rooted had clear bases in law," as is evidenced by Judge Cross-Goldenberg recommending that large portions of their motion be granted. *Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, 2022 WL 275378, at *1 (2d Cir. Jan. 31, 2022).

Second, the court considers motivation. As a threshold matter, Plaintiff's motivation in bringing this suit is legitimate, given that Defendant pocketed over $150,000 of its money, hijacked control of its website, and falsely held himself out to be in control of the business. (*See* Default R&R at 2-5.) Further, the allegations

suggest that Defendant was motivated by a desire to "seize control" of business communications, (*id.* at 16), to misappropriate company funds, (*id.* at 4), and to "do everything in his power to harm the company and falsely hold himself as the sole owner," (*id.* at 5).

For similar reasons, the court notes that the question of objective factual and legal unreasonableness also weighs in favor of granting attorneys' fees. Indeed, given the drastic actions alleged to have been taken by Defendant (who fraudulently wrested control of the company's media, finances, and public image from its actual managers), Defendant's total lack of appearance in this case, and the difficulty Plaintiffs faced in contacting and serving him, their motion for default judgment and their request for attorneys' fees appear quite reasonable to the court.

Last, and perhaps most importantly, the particular circumstances certainly indicate a need to advance considerations of deterrence. Defendant's actions were repeated and rooted in a years-long disagreement. He made multiple unauthorized transfers from Plaintiff's account. After being removed from the account for doing so, he falsified business records in order to regain access, remove Plaintiffs, and make another unauthorized transfer—this one of over $160,000. Despite being aware of Plaintiff's continued existence (given he helped found the company and had been in recent communication with it), Defendant attempted through multiple methods to "mislead consumers into believing they [we]re interacting with Everyday People" when they were not, including by "seizing control of the company's website domain, . . . turning off email access for accounts associated with that domain, creating a duplicate website with [a similar] domain[,] . . . and changing the company's social media accounts over to his own email address and phone number so the accounts were in his control." (*id.* at 5). This conduct is brazen, and "the need for deterrence is manifest." *Abbott Lab'ys v. H & H*

*Wholesale Services, Inc.*, 2022 WL 17977495, *1, *11 (E.D.N.Y. Dec. 28, 2022) (awarding attorneys' fees where Defendant had "willfully infringed [Plaintiff's] trademarks" by selling its products without its permission).

Taking all of these enumerated factors into account, and considering the rest of the factual and legal circumstances, the court finds that Judge Cross-Goldenberg was correct that Plaintiff is entitled to attorneys' fees, even under this different standard.

Judge Cross-Goldenberg's analysis as to the proper measure of these attorneys' fees is well-reasoned and the court adopts it in full.

## IV. CONCLUSION

The court GRANTS Plaintiff's second motion for default judgment and ADOPTS the Default R&R subject to the modification discussed above. The court respectfully DIRECTS the Clerk of Court to enter default judgment against Roblé Ali consistent with this Memorandum and Order. The court permanently ENJOINS Roblé Ali from the conduct described in the Complaint's Prayer for Relief, as set forth on pages 3-4 of this Memorandum and Order. The court AWARDS Everyday People NYC, Inc. $169,000 in damages, $61,359.70 in attorneys' fees, and $1,855 in costs. The Clerk of Court is respectfully DIRECTED to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 22, 2026

s/Nicholas G Garaufis, USDJ
NICHOLAS G. GARAUFIS
United States District Judge